**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 10-68-DLB**

**EDDIE MERIDA**                                                                   **PLAINTIFF**

**vs.**                 **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Eddie Merida applied for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) on March 21, 2007. (Tr. 140-43, 144-46). At the time of filing, Plaintiff was 36 years old and alleged a disability onset date of March 16, 2007. (Tr. 140). Plaintiff alleges that he is unable to work due to chronic bilateral knee pain and anger management issues. (Tr. 83, 174). His application was denied initially and again on reconsideration. (Tr. 118-121, 125-27 ). At Plaintiff's request, an administrative hearing was conducted on November 20, 2008. (Tr. 70-113 ). On March 9, 2009, Administrative Law Judge (ALJ) Don C. Paris ruled that Plaintiff was not disabled

1

and therefore not entitled to DIB or SSI. (Tr. 37-50). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 26, 2009.[1] (Tr. Tr. 28-30).

On February 24, 2010, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #9, 10).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d

---

[1] Plaintiff also filed a Petition for Reconsideration of the Appeals Council Action (Tr. 18-27) and a Motion to Submit Additional Evidence (Tr. 6-17). On February 24, 2010, the Appeals Council again denied the request for review and instructed Plaintiff to file a new claim for disability if he wanted the new evidence to be considered, as it was dated after the ALJ's decision. (Tr. 1-4).

345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since applying for benefits. (Tr. 39). At Step 2, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees with chronic knee pain, left worse than right; anti-social traits; and a history of polysubstance abuse (alcohol and cannabis). (Tr. 39). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 41).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 42).

Plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently. (Tr. 42). He can stand/walk a total of six hours in an eight hour work day and sit six hours in an eight hour work day. (Tr. 42). However, he requires a sit/stand option with no prolonged standing/walking in excess of one-half hour without interruption. (Tr. 42). Plaintiff is also limited to no more than frequent pushing/pulling or use of foot controls with the lower extremities. (Tr. 42). He can only occasionally climb stairs/ramps, stoop, kneel or crouch and can never climb ladders/ropes/scaffolds or crawl. (Tr. 42-43). In addition, Plaintiff should avoid concentrated exposure to full body vibration or hazards such as unprotected heights and dangerous machinery. (Tr. 43). Since Plaintiff also suffers from mental impairments, the ALJ found that he would be limited to performing simple and non-detailed work tasks. (Tr. 43). Furthermore, he requires a work environment that is object focused and contact with co-workers, supervisors and the general public is infrequent and casual. (Tr. 43). Based upon these findings, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 48).

At Step 5, the ALJ found that Plaintiff was born on October 7, 1970 and was 36 years old, which is defined as a "younger person," on the alleged disability onset date. (Tr. 48). *See* 20 C.F.R. §§ 404.1563, 416.963. The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 48). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 49). ALJ Paris therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged onset disability date of March 16, 2007 through the date of the decision. (Tr. 50).

**C.    Analysis**

Plaintiff raises several arguments on appeal. First, Plaintiff contends the ALJ failed to give appropriate weight to the opinions of treating physicians, Jeffrey W. Golden, M.D. and Veronica Vasicek, M.D., and failed to give adequate reasoning for refusing to accept these opinions. Second, Plaintiff argues that the ALJ did not consider the combined effects of his impairments. Third, Plaintiff argues the ALJ did not consider the durational requirement of substantial gainful activity. Next, Plaintiff alleges the ALJ erred in finding his impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Finally, Plaintiff argues that the Appeals Council erred when it refused to remand the case for consideration of additional evidence which was not available until after the ALJ hearing. The Court will address each of these challenges in turn.

**1.    The ALJ Did Not Improperly Reject the Opinions of Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ failed to give deference to the opinions of two treating physicians, Drs. Golden and Vasicek.[2] "Generally, the opinions of treating physicians are

---

[2] Although not raised in the "Issues Presented" section of Plaintiff's Motion for Summary Judgment (Doc. #9-2 at 2-3), Plaintiff also claims that "the ALJ had before him the opinion of the longtime treating psychiatrist on whom, without adequate reasoning otherwise, he is to assign great weight where objective evidence exists to support the treating professional. (See AR p. 132). The ALJ failed to meet this required standard in his decision." (Doc. #9-2 at 5). However, Plaintiff fails to articulate which medical findings and opinions the ALJ impermissibly disregarded, in addition to the name of the alleged longtime treating psychiatrist. The citation to the record (Tr. 132) is a letter to Plaintiff's counsel from the Office of Disability Adjudication and Review regarding the hearing before ALJ Paris, not a medical opinion.
   In failing to direct this Court's attention to the medical findings or opinions the ALJ allegedly disregarded, or in what manner the ALJ's RFC was impermissibly inconsistent with the assessment of Plaintiff's treating and examining physicians, Plaintiff's argument lacks the specificity required by this Court on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). When a plaintiff neglects to offer any particularized argument to support her assertion, this Court will not devise arguments on plaintiff's behalf, nor will the Court engage in an "open-ended" review of the entire record to determine which opinions–if any–the ALJ failed to assign proper deference. *Id.* Accordingly, "[i]n the absence of any

given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ concludes that either criterion is not satisfied, he applies the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544. "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Accordingly, an ALJ may elect not to give controlling weight to a treating physician's opinion, as long as he provides "good reasons" for so doing. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the ALJ gave little weight to the restrictions included in Dr. Vasicek's functional capacity assessment dated September 25, 2007. (Tr. 47). Dr. Vasicek opined that Plaintiff could only stand for thirty minutes at a time and less than two hours total in an eight hour day. (Tr. 370-71). She stated that Plaintiff could occasionally lift/carry ten pounds, but could never lift/carry twenty pounds. (Tr. 372). She also found that Plaintiff

---

such focused challenge, we decline to broadly scrutinize any and all treating physician's opinions in the record to ensure that they are properly accounted for in the ALJ's decision." *Id.* Consistent with Sixth Circuit precedent, this Court will not conduct an "open-ended" review of the entire medical record in search of all *possible* inconsistencies to determine whether the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *Id. See also Richardson v. Perales*, 402 U.S. 389, 399 (1971).

6

was incapable of stooping or crouching. (Tr. 372). Further, Dr. Vasicek concluded that Plaintiff would need two fifteen-minute unscheduled breaks throughout the day and would be absent from work about twice a month due to his impairment. (Tr. 371-72). The ALJ found these restrictions to be inconsistent with the objective medical evidence and other evidence in the record. (Tr. 47).

First, the ALJ noted that Dr. Vasicek's assessment was based on an examination of the Plaintiff that she performed over one year prior to the assessment.[3] (Tr. 47). Furthermore, Dr. Vasicek admitted that her limitations were "generalizations for a person with knee pain and early arthritis or meniscal tears." (Tr. 372). Indeed, the only clinical finding that Dr. Vasicek cites to support her opinion is the April 30, 2007 treatment note–an examination performed five months earlier by the physician's assistant, not Dr. Vasicek. (Tr. 261, 369). The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The fact that Dr. Vasicek stated her restrictions were based on "generalizations" and that she had not examined Plaintiff in over a year show that the assessment is not supported by specific medical findings.

Furthermore, Dr. Vasicek's assessment contradicts her own medical records. In a May 2007 evaluation, Plaintiff was allowed to return to modified work on April 30, 2007.

---

[3] Plaintiff was seen by Dr. Vasicek's practice group, Bluegrass Orthopaedics, on April 30, 2007; however, Dr. Vasicek notes in her assessment that Plaintiff was only seen by the physician's assistant at that appointment. (Tr. 369).

7

(Tr. 290). It was noted that he could perform full weight bearing activities; constantly sit, stand and walk; frequently climb stairs; occasionally bend, squat and climb ladders; and had no lifting limitations. (Tr. 290). This directly conflicts with her September 2007 assessment, and she did not even examine Plaintiff during the intervening months. (Tr. 290, 369-73). *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (holding the ALJ did not err in declining to refer to treating physician's opinion where he originally opined that Plaintiff could perform sedentary work and then changed his opinion without providing any supporting objective medical evidence). Additionally, the ALJ noted that there was nothing in Dr. Vasicek's treatment records to support her opinion that Plaintiff would need to take unscheduled breaks or miss work secondary to his impairment. (Tr. 47). Because the record is devoid of any deterioration in Plaintiff's condition that would support the more restrictive limitations, the ALJ did not commit any error, much less reversible error, in affording little weight to Dr. Vasicek's opinion.

The ALJ also gave little weight to Dr. Golden's residual functional capacity assessment dated May 1, 2008. (Tr. 47-48). Dr. Golden opined that Plaintiff could lift/carry twenty pounds occasionally and frequently and stand a total of four hours in an eight hour day. (Tr. 394). He further found that Plaintiff could never climb, stoop, crouch, kneel or crawl and was limited in his exposure to heights, moving machinery and temperature extremes. (Tr. 395). Finally, Dr. Golden opined that Plaintiff had severe functional limitations secondary to depression, anxiety and possible bi-polar disorder, including poor to no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses and maintain concentration and attention. (Tr. 396).

The ALJ gave little weight to Dr. Golden's assessment because he is a general practitioner, not a mental health specialist, and is not qualified to assess Plaintiff's mental impairments. (Tr. 48). *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). Furthermore, the ALJ found Dr. Golden's assessment that Plaintiff can never climb, stoop, crouch, kneel or crawl to be inconsistent with the objective medical evidence. (Tr. 47).

At the time of Dr. Golden's assessment, he had been seeing Plaintiff for less than five months. (Tr. 422-25). Upon a review of Dr. Golden's treatment records, it appears he only performed two brief knee examinations. (Tr. 422, 425). At Plaintiff's first visit, Dr. Golden noted the knee examination did not reveal any effusions and stated "[a]n extensive examination was not done in the office today." (Tr. 425). Further, on May 1, 2008, Dr. Golden's examination simply noted his knees were tender to palpation in the medial joint lines. (Tr. 422). Beyond these two examinations, Dr. Golden's records are devoid of any extensive examinations or other objective testing. Consultative examining physician Dr. Barry Burchett did perform an extensive examination of the Plaintiff. His examination revealed no tenderness, redness, warmth, swelling, fluid, laxity or crepitus of the right knee, ankles or feet. (Tr. 337). He also noted no calf tenderness, redness, warmth, cord sign or Homans sign. (Tr. 337). He found a trace of generalized swelling about the left knee. (Tr. 337). The Plaintiff was able to stand on one leg at a time without difficulty and was able to fully squat. (Tr. 337-38). While Dr. Burchett found Plaintiff would be limited in activities that require climbing or squatting, he did not restrict him from such activities altogether. (Tr. 338). Given the evidence of record, substantial evidence supports the ALJ's determination to give little weight to the opinion of Dr. Golden.

9

## 2. The ALJ Properly Considered the Combined Effects of Plaintiff's Impairments

Plaintiff argues the ALJ did not properly consider the combined effect of all his impairments. An examination of the ALJ's decision refutes this argument. The Commissioner must "consider the combined effect of all [the individual's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If [the Commissioner] find[s] a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. §§ 404.1523; 416.923. The ALJ considered all of Plaintiff's severe impairments, and Plaintiff's RFC reflects a consideration of their combined effects. (Tr. 42-43). The ALJ individually addressed Plaintiff's bilateral knee pain, anti-social traits and polysubstance abuse, referencing the medical records pertinent to each condition discussed. (Tr. 39-40). The ALJ's "individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

Moreover, Plaintiff does not provide the Court with any rationale to support his argument. Rather, Plaintiff relies on conclusory statements, telling the Court that "[i]t is clear from the medical evidence within the records that Plaintiff is severely impaired from his physical and mental difficulties." (Doc. #9-2 at 5). Despite this supposed abundance of evidence in the record, Plaintiff does not cite to a single portion of the transcript that would support his position that the ALJ did not consider the combined effects of all Plaintiff's impairments.

### 3. The ALJ Properly Considered the Durational Requirement of Substantial Gainful Activity

Plaintiff contends that the ALJ erred by failing to consider the durational requirement of substantial gainful activity. Plaintiff cites *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999) for the proposition that substantial gainful activity means more than merely the ability to find a job and physically perform the same but also requires the ability to hold the job for a significant period of time. *Id.* at 694. While the ALJ did not cite to *Gatliff*, his decision rejects Plaintiff's contention that he cannot maintain a job. Implicit in the RFC assigned to Plaintiff by the ALJ is a finding that Plaintiff is capable of maintaining employment. Moreover, the VE testified that jobs exist in significant number in the national economy that Plaintiff could perform. (Tr. 49-50). As stated above, the ALJ gave little weight to Dr. Vasicek's opinion that Plaintiff would miss two days of work per month due to his impairments, because it was not supported by the objective medical evidence. Furthermore, Plaintiff does not explain why an individual with his RFC would be unable to maintain employment. Plaintiff simply states:

> The Courts have imposed a durational requirement of substantial activity [that] ... requires the ability to hold the job for a significant period of time. ... This was not considered by the ALJ, nor were the numerous exertional and non-exertional restrictions placed upon the Plaintiff due to his mental limitations. This is made clear in the medical reports herein.

(Doc. #9-2 at 6). Plaintiff's conclusory argument is simply not supported by the record herein.

### 4. Plaintiff Failed to Show That He Meets a Listing

Plaintiff also argues that the ALJ should have found his impairments severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

11

Appendix 1. However, Plaintiff failed to identify what listing(s) he believes his impairments meet or medically equal. Furthermore, he does not cite to any part of the record to support his argument. In failing to direct this Court's attention to which listing(s) his impairments allegedly meet or medically equal and any supporting medical evidence, Plaintiff's argument lacks the specificity required on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). As stated above, when a plaintiff fails to offer any particularized argument to support his assertion, this Court will not "formulate arguments on the Plaintiff's behalf" or engage in an "open-ended review of the entirety of the administrative record to determine ... whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and ... whether the Commissioner sufficiently accounted for this evidence." *Id.*

A review of the administrative record in conjunction with the ALJ's written opinion leads the Court to conclude that the ALJ's finding that Plaintiff's impairments do not meet or medically equal one of the listed impairments was supported by substantial evidence. With regard to Plaintiff's osteoarthritis of the knees, the ALJ evaluated Plaintiff's condition under Listing 1.02 (Major dysfunction of a joint(s)) and noted the record was devoid of any evidence of a gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, joint space narrowing, bony destruction, or ankylosis with ineffective ambulation. (Tr. 41). This conclusion is supported by the treatment records which indicate that Plaintiff had a full range of motion in both knees. (Tr. 261). Additionally, a consultative medical examination performed in June 2007, by Dr. Robert Fitz revealed that Plaintiff displayed no abnormality in his posture or gait and did not utilize an assistive device for ambulation. (Tr. 314).

With regard to Plaintiff's mental impairments, the ALJ evaluated Plaintiff's limitations under Listings 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders). The ALJ found that Plaintiff's impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.[4] (Tr. 41-42). This conclusion is also supported by substantial evidence.

At the hearing, Plaintiff testified that he cares for his personal needs and performs household chores such as cooking, straightening his room, doing laundry and caring for his friend's pets. (Tr. 97-98). In addition, Dr. Prout found that Plaintiff only had mild restrictions in his ability to perform daily activities. (Tr. 355). Furthermore, no treating or examining physician has precluded Plaintiff from performing daily activities secondary to his mental impairments. The record also shows that Plaintiff only has moderate difficulties in social functioning. Plaintiff had problems relating appropriately with his supervisors at work which sometimes led to anger outbursts. (Tr. 196). However, Plaintiff's employer stated he got along fine with co-workers and listened to management. (Tr. 196-197). Plaintiff's own testimony concludes that he has several social relationships. He testified that he has lived with several friends, smokes marijuana once or twice a month when he runs into friends and depends on friends and family for transportation and money. (Tr. 74-75, 318). Finally, the record reflects that Plaintiff only has mild difficulties with concentration, persistence or pace. The ALJ noted that Plaintiff was able to maintain

---

[4] A marked limitation means more than moderate but less than extreme. (Tr. 41).

concentration and attention at the hearing and answered all questions appropriately. (Tr. 42). Further, Dr. Fitz opined that Plaintiff's memory and concentration were grossly intact, and Plaintiff had the ability to sustain attention to perform simple, repetitive tasks. (Tr. 315, 321). Therefore, given the lack of objective medical evidence that would support Plaintiff's allegation that his impairments meet or medially equal a listing, the Court finds the ALJ's determination that Plaintiff's impairments do not meet or medically equal a listed impairment is supported by substantial evidence.

5.     **Plaintiff's Additional Evidence Did Not Require a Sentence Six Remand**

Plaintiff's final argument on appeal is that this case should be remanded to the ALJ as he is now in possession of objective medical evidence - obtained after the ALJ rendered his decision- which supports his allegations of disabling pain. Sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  Plaintiff bears the burden of demonstrating that remand is proper under section 405. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).

Plaintiff offers no explanation as to why this new evidence has met the good cause test of sentence six other than simply stating the evidence was not available at the time of the hearing. (Doc. #9-2 at 4). In fact, Plaintiff does not even acknowledge that he has the burden of demonstrating remand is proper pursuant to 42 U.S.C. § 405(g). This Circuit, however, takes a hard line on the good cause test; the fact that medical reports are prepared after the Commissioner's final decision does not demonstrate good cause. *Oliver*

14

*v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). In order to show good cause, the Plaintiff must give a valid reason for his failure to obtain relevant examinations prior to the hearing. *Id.*

Here, Plaintiff offers absolutely no explanation why the medical tests, the results of which he asserts justify remand, could not have been performed prior to the hearing when there was ample opportunity to do so. Because the Plaintiff has offered the Court no reason why he did not avail himself of the opportunity to supplement the record before his hearing, he has failed to satisfy the good cause test of section 405(g). Therefore, the Plaintiff's request to remand this case for the consideration of additional medical evidence is denied.[5] The Plaintiff retains the right to submit a new application for benefits based upon the newly-obtained evidence of claimed disability. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.3d 709, 712 (6th Cir. 1988).

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's finding that the Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Accordingly,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**;

---

[5] In order to justify remand under sentence six of section 405(g) a plaintiff must demonstrate both materiality and good cause. *Willis*, 727 F.2d at 554. Because Plaintiff failed to satisfy the good cause test, it is not necessary for this Court to decide the question of whether the new medical reports constituted "material" evidence. *Id.*

3. Defendant's Motion for Summary Judgment (Doc. #110) is hereby **GRANTED**;

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 30th day of August, 2010.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\5-10-68 MeridaMOO.wpd